## W. E. TRAINER ET AL. v. C. L. WOLFE ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 11, 1891—Decided February 23, 1891.

[To be reported.]

(*a*) By § 66, act of March 31, 1860, P. L. 400, members, officers and agents of any corporation or public institution are forbidden to be interested "in any contract for the sale or furnishing of any supplies or materials," to be furnished to or for the use of such corporation or institution:

1. A contract entered into in violation of this act is absolutely void and incapable of ratification: Milford Bor. v. Water Co., 124 Pa. 610. When a contract is prohibited by law, and its execution made a criminal offence, it needs no argument to show that it cannot be warmed into life by a ratification: Per Mr. Chief Justice PAXSON.

2. But, as the act makes no mention of a purchase of real estate and is a highly penal statute, it cannot be extended by implication beyond its

Statement of Facts.

precise meaning, so as to apply to a purchase, by a school board, of real estate in which one of the directors is interested as an owner; and such purchase may be ratified by a new and disinterested board.

3. At all events, a bill in equity filed by taxpayers, praying that such a purchase be declared void, cannot be sustained when the school district, which has erected a school building upon the property so purchased, and a number of the persons who were concerned in the sale as vendors, are not made parties to the proceeding.

Before . PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 138 January Term 1891, Sup. Ct.; court below, number and term not shown.

William E. Trainer and others filed a bill in equity against the "School Board of the School District of Lower Chichester township" and the Linwood Land Company, praying for injunctions restraining said school board from purchasing a certain lot of ground from the Linwood Land Company, and erecting a schoolhouse thereon; restraining John D. Goff, treasurer of said school board from paying out any moneys from the treasury of said school district on that account, and restraining the Linwood Land Company from selling and conveying said lot of ground to said school district.

A preliminary injunction, awarded upon the filing of the bill, was dissolved after hearing, WADDELL, P. J., it appearing that the transaction complained of had been consummated before the bill was filed. Thereupon, the plaintiffs filed amendments to the bill, wherein Charles L. Wolfe, Edward C. Burton, John D. Goff, Isaac F. Hendrixson and the Linwood Land Company were named as defendants, and averments made in substance as follows:

The plaintiffs were landowners and taxpayers of the township of Lower Chichester, and the four individuals named as defendants were members of the school board of the school district composed of said township. At a meeting held July 25, 1889, said school board, consisting of six members, adopted a resolution for the purchase of a lot of ground for school purposes from the Linwood Land Company. Its adoption was effected by the votes of the four members of the board who were named as defendants, the remaining two members voting in the negative. John D. Goff, one of the members who voted

Statement of Facts.

for the resolution and whose vote was necessary to pass it, was at that time an owner of an interest in the lot in question and he voted for the resolution in violation of § 66, act of March 31, 1860, P. L. 400.

The bill prayed, inter alia, that said resolution be declared null and void and for general relief.

The defendants' answer averred, inter alia, that the amended bill was defective for want of proper parties, in that "the School District of the Township of Lower Chichester," and the Delaware County Trust, Safe Deposit & Title Insurance Company were not made parties defendant.

Issue having been joined upon bill and answer, the cause was referred to *Mr. Perry M. Washabaugh* as examiner and master, who found in substance the following facts:*

---

* The dates when the bill was filed, the dissolution of the preliminary injunction awarded, the amendments to the bill made, the issue joined and the reference to the examiner and master, did not appear in the paper-books. In the appellees' paper-book it was stated that the following record of the school board was in evidence, but it was not found in the appellants' book:

"LINWOOD, PA., June 2, 1890.

"By call of the old school board the members of the new school board met this evening at the Central Grammar School, with J. D. Goff and R. H. Downes, the new members, present, and C. H. Wolfe, I. F. Hendrixson, and E. C. Burton, old members holding over, W. E. Trainer having resigned at the old board.

"Mr. I. F. Hendrixson offered the following preamble and resolution, and asked to have the same spread on the minutes, which is hereby done:

"'Whereas, The school board, at a meeting held August 14, 1889, purchased of The Delaware County Trust, Safe-Deposit & Title Insurance Company, of the City of Chester, a lot of land for school purposes, and directed that an order be drawn upon its treasurer for the sum of seven hundred and eighty-five dollars in payment thereof; and Whereas, some questions have been raised by citizens of the township and former members of the board, of the legality of said proceedings, because John D. Goff, a member of said board, voted in favor of said purchase, and was at the time interested in the lot purchased; and Whereas, the present board is convinced that said purchase was made in good faith, and that the land purchased was required for school purposes;

"'And Whereas, a schoolhouse has since been erected upon said lot; now, for the purpose of quieting all doubts, it is hereby

"'Resolved, That the action of the former school board in purchasing said lot of land and directing an order for the payment of said sum of

Statement of Facts.

The subject of procuring a lot for the erection of a new school building, having been before the school board of Lower Chichester township for several years, and unsuccessful efforts having been made by the members of the board to agree upon any site, a resolution was adopted at a meeting held July 25, 1889, accepting an offer of the Linwood Land Company to sell a lot to the school district for $785, the members voting for the resolution being the four defendants, Wolfe, Hendrixson, Goff and Burton. Of the remaining two members of the board, one voted against the resolution and the other was absent. The secretary of the board was then instructed to notify the president of the land company that the offer to sell was accepted, and to have the deed, etc., executed. The next meeting was held on August 8, 1889, when a communication was received from the Linwood Land Company notifying the board that the papers for the transfer of the lot had been executed. On August 14, 1889, another meeting was held, at which all the members of the board were present. Among other matters attended to, a motion was carried by the votes of Wolfe, Goff, Hendrixson and Burton, that an order be drawn for $785, to pay for the lot purchased. On the following day an order was drawn for the money and turned over to the Delaware County Trust, Safe-Deposit & Title Insurance Company, which company delivered the deed for the lot to Mr. Goff.

"The title to said lot was in the name of said trust company, who advanced most of the purchase money, but who held this lot, which was a part of a larger tract, in trust for the use of Lewis N. Wood, Irwin D. Wood and John D. Goff, who were the actual purchasers of the same as copartners, under the name of the Linwood Land Company. The declaration of trust provided in substance that the trust company should use the proceeds of any and all sales of said land until their claim, interest and costs should be satisfied, when the trust company should

money, and the act of the treasurer of said board in honoring said order and paying the amount thereof, be hereby ratified and confirmed.'

"Mr. Hendrixson moved that the preamble and resolution just read be adopted. Mr Goff asked that he be excused from voting, inasmuch as the question had been raised as to his right to vote on the other occasion; Mr. Downes seconded the motion. Wolfe, Downes, Hendrixson and Burton voting in favor, the motion carried."

convey any residue of said land to them in such manner and upon such terms as they might mutually agree upon.

" This trust was, and still is, a live trust. John D. Goff, who voted for the resolution to purchase the lot, was the same person who, under certain contingencies, will become a beneficiary under said trust, and in that event, might be benefited to some extent by the sale of this lot. . . . .

" The master finds as a fact that the school board and every individual member thereof acted in entire good faith, and within the discretion which the law gave them. There is no evidence of any want of good faith upon the part of any member of the board. The members of the school board and the taxpayers of the township had knowledge of the fact that said John D. Goff was secretary of the Linwood Land Company. . . . . The plaintiffs do not allege that the location is unsuitable, the price paid for the lot too high, or that there was any fraud or deception practiced by any one in the whole transaction."

Upon the facts so found the master reported, in substance, as his opinion, that neither law nor equity could or would interfere with a school board in the discharge of its duties, when the matter was within the discretion given to a majority of the directors; that, as the school district was not a party to the suit, neither the actions of the school board, nor those of any individual member thereof, could be called in question collaterally by a court of equity, for the purpose of punishing a member for an alleged violation of a positive law; that if John D. Goff violated a positive law, the courts of law alone could give relief or apply the remedy; and that the court, sitting in equity in this case, had no jurisdiction over the parties, or to grant the prayer of the bill. He accordingly recommended that the bill be dismissed at the cost of the plaintiffs.

The plaintiff filed exceptions to the report, alleging that the master erred:

1. In not finding distinctly as a fact that John D. Goff, one of the members of the school board of the school district of Lower Chichester, at the time of voting for the resolution to purchase the lot of ground in question from the Linwood Land Company, was interested in said lot as one of the owners thereof.[1]

2. In not finding that said resolution, which was only

adopted by the vote of the said John D. Goff, was null and void, and that all the proceedings of the said school board, consequent upon said void resolution, were without warrant and null and void; and in recommending a decree that the bill be dismissed, and in not recommending a decree affording plaintiffs adequate relief.[2]

The exceptions, having been overruled by the master and renewed before the court, were after argument dismissed in the following opinion, CLAYTON, P. J.:

This is a taxpayer's bill. The complaint is that the school board have illegally purchased a lot of ground, and are about to expend large sums of money in the erection of a schoolhouse thereon. It appears that the resolution for the purchase of the lot was only passed by a majority of one, and that John D. Goff, who was one of the equitable owners of the land sold, was also a school director and voted in the affirmative. As the resolution could not have passed without Mr. Goff's vote, the bill is filed to have his vote declared illegal and all consequent relief.

While several questions have been raised by the answer, the case can be decided upon a single point. The vital question in the case is: Does the act of assembly of March 31, 1860, § 66, apply to a case like this?

The act is highly penal and must be strictly construed. By the words of the act, it is made a misdemeanor for any officer of any public institution to be in any wise interested in any contract for the sale or furnishing of "any supplies or materials," to be furnished to or for the use of any corporation of which he shall be a member. His office is also forfeited by such conduct. Does the act apply to transactions in real estate? As the act has expressly confined its operation to "supplies and materials," it must be construed to exclude all other subjects: Expressio unius est exclusio alterius. It is a rule of construction of contracts, as well as statutes, that the express mention of one thing implies the exclusion of all others. We are therefore of opinion that the act of assembly relied upon by the complainants does not apply to a sale of land.

This view of the law is decisive of the whole case. We may add, however, that a new and entirely disinterested board, with full knowledge of all the facts and circumstances, have, by

Arguments.

a solemn preamble and resolution, fully ratified the action of the old board. The case of Milford Bor. v. Water Co., 124 Pa. 610, has been cited by the complainants as deciding that such a ratification could not be made. A careful reading of that case, however, will show that it expressly admits such power. All that is decided by that case is that no implied ratification would cure the fatal poison in the original contract.

The bill is dismissed with costs to the respondents.

—Thereupon the plaintiffs took this appeal, assigning for error:

1, 2. The dismissal of plaintiffs' exceptions.[1] [2]

*Mr. W. B. Broomall* (with him *Mr. W. I. Schaffer*), for the appellants:

1. The law requires a majority of the members of a school board to vote affirmatively on a resolution to purchase real estate before it can be adopted: Act of April 11, 1862, P. L. 471. This board being composed of six members, and the resolution in question having received only four votes, the vote of John D. Goff in favor of it was necessary to its passage. He was one of the owners of the land purchased, the trust company which held the legal title occupying the position of a mortagee at common law. He thus occupied the position of a purchaser, as a public officer, from himself as owner. This is against the public policy expressed in § 66, act of March 31, 1860, P. L. 400.

2. The words "supplies and materials," used in the act, are most comprehensive, and embrace every commodity furnished to a school board, including land. The strict rule of construction invoked by the court below, does not apply in a civil proceeding like this, but the statute should be construed so as to effectuate the intention of the makers: Big Black Cr. Imp. Co. v. Commonwealth, 94 Pa. 450. Moreover, if the limited construction given to it by the court below be adopted, the statute is but a repetition of § 26, act of May 8, 1854, P. L. 623, and § 17, act of April 11, 1862, P. L. 475. The contract of purchase is utterly void and is incapable of ratification by a subsequent board: Milford Bor. v. Water Co., 124 Pa. 610. Nor is the alleged condonation by subsequent ratification, spoken of in the opinion of the court below, in the case; it was not in evidence.

*Mr. O. B. Dickinson*, for the appellees:

Arguments.

1. Section 66, act of March 31, 1860, P. L. 400, cannot apply for two reasons: (*a*) Because it was not intended to refer to school directors. That such was not the legislative intention is shown by the fact that another act of the same general character applied to such officers: § 26, act of May 8, 1854, P. L. 623; § 17, act of April 11, 1862, P. L. 475. (*b*) Because the act does not in terms apply to transactions such as this, and it is to be construed strictly: Commonwealth v. Christian, 9 Phila. 556. In addition to this, there are valid reasons why the plaintiffs' bill should be dismissed. The purchase had been completed openly and in good faith, long before a court of equity was asked to interfere, and the plaintiffs were guilty of laches. Moreover, the plaintiffs have not put themselves in a position to ask that the purchase be declared null and void, and that the purchase money be decreed to be returned. For:

2. The bill is defective for want of parties. The school district has erected a building upon the lot, and will therefore be vitally affected by the decree asked for; but it is not a party. The trust company which sold the land and received the purchase money to be returned, is not a party. I. D. Wood and L. N. Wood, who were interested in the sale, are not parties. The banking institution which paid the order might be affected, and it is not a party. If the money expended in erecting the building is also to be ordered refunded, should not those who are to refund it be made parties? If, however, the decree is to affect only the school treasurer, the court has no jurisdiction, because there is a complete remedy at law, through the action of the township auditors and by appeal from their decision: § 104, act of April 15, 1834, P. L. 556; act of May 1, 1876, P. L. 88. Where there is a statutory remedy, a bill in equity will not lie: Commonwealth v. Plankroad Co., 35 Pa. 152; Hamersly v. Turnpike Co., 8 Phila. 314.

3. Nor does the court have jurisdiction of the subject matter of the bill. The jurisdiction to entertain a bill in equity is exclusively the creature of statute: Dohnert's App., 64 Pa. 311; Bakewell v. Keller, 11 W. N. 300; and there is no statutory warrant for entertaining this bill. The clause in § 13, act of June 16, 1836, P. L. 789, conferring on courts of equity jurisdiction as to the supervision and control of corporations,

Opinion of the Court.

does not authorize it, for the school district is not a corporation, and if it were, it is not a party. Nor does the clause extending the jurisdiction to the prevention or restraint of the commission or continuance of acts contrary to law, apply to this case, because such is neither the purpose nor the prayer of the bill.

4. Again, the decree asked for is merely to decide an abstract question, to wit, the legality of Goff's vote, and courts of equity are not constituted for such purposes: Grubb's App., 90 Pa. 228. Further, the plaintiffs do not come into court with clean hands. They are seeking by indirection to control the majority of the school board in the exercise of a discretion vested in them by law. This discretion the courts will not interfere with. But, whatever view the court may take of the original question, the act of the school board has been ratified as the court below finds. The allegation of appellants that the resolution of ratification was not in evidence, is incorrect; and the ratifying act cured the original defect, if any existed: Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217; Shisler v. Vandike, 92 Pa. 447.

OPINION, MR. CHIEF JUSTICE PAXSON:

The complainants are taxpayers of the township of Lower Chichester, in the county of Delaware, and filed this bill in the court below to restrain the school board of the school district of said township from purchasing a certain lot of ground from the Linwood Land Company, for the purpose of erecting a schoolhouse thereon. The court below issued a preliminary injunction, as prayed for in the bill. It subsequently appearing that the purchase of the lot had been consummated before the injunction went out, the court below dissolved it. The case then proceeded to final hearing, and the bill was dismissed. The ground of the proceeding was that the lot in question belonged to John D. Goff, treasurer of the board, and that the resolution to purchase it was carried by his vote. The master has found, and error is not assigned to such finding, that each member of the board acted in entire good faith. The location of the lot appears to have been suitable, and the price reasonable.

The first assignment alleges error " in not finding distinctly as a fact that John D. Goff, one of the members of the school

board of the school district of Lower Chichester, at the time of the voting for the resolution to purchase the lot of ground in question from the Linwood Land Company, was interested in said lot as one of the owners thereof." This was the important fact in the case, and, while the master has not found it as clearly as he might have done, it nevertheless sufficiently appears. Indeed, it was not disputed that Goff was one of the beneficial owners of the property at the time of the sale.

The other assignment presents the question of the effect of this sale, the complainants alleging that it was null and void, by reason of Goff's interest in the property at the time he gave the deciding vote in favor of the purchase. This assignment was evidently based upon our decision in Milford Bor. v. Water Co., 124 Pa. 610. In that case, it was held that, under the provisions of the sixty-sixth section of the act of March 31, 1860, P. L. 400, a borough ordinance contracting with a water company for a supply of water to the borough, enacted when a majority of the councilmen were stockholders in the water company, was illegal and void, and no liability could be enforced thereon. In that case there was an attempt to show a subsequent ratification of the contract by the action of council when no one of its members was a member of the water company. We held, however, that the original contract was incapable of ratification, for the reason that it was prohibited by law, and therefore absolutely void. There, as here, good faith and the absence of fraud were alleged, but we said: "It may be there was no fraud, actual or intended, in the present case, but we will not allow it to be made an entering wedge to destroy the act of 1860. Of what possible use would that act be if its violations are condoned, and its prohibited, criminally condemned contracts allowed to be enforced under the guise of an implied ratification?" Where a contract is not only prohibited by law, but its execution made a criminal offence, it needs no argument to show that it cannot be warmed into life by ratification. It follows that, if the contract for the purchase of this lot comes within the act of 1860, it is utterly void, and is not cured by the subsequent payment of the purchase money, the acceptance of the deed, or any attempted ratification of it by the school board. Nothing short of a new contract, made by a board capable of contracting, would remedy the difficulty.

The learned judge below held that the case does not come within the act of 1860, in which we think he was correct. The portion of the sixty-sixth section applicable to the case in hand is as follows:

"Nor shall any member of any corporation or public institution, or any officer or agent thereof, be in any wise interested in any contract for the sale or furnishing of any supplies or materials, to be furnished to or for the use of any corporation, municipality or public institution of which he shall be a member or officer, or for which he shall be an agent, nor directly or indirectly interested therein, nor receive any reward or gratuity from any person interested in such contract or sale," etc.

Singularly enough the act makes no reference to a purchase of real estate. It perhaps did not occur to the mind of the legislature that any one would be so foolish as to take a defective title to real estate. It was urged, however, that the case comes within the meaning and spirit of the act. If we concede this, the difficulty remains that it is a highly penal statute, and for this reason we cannot extend it by implication beyond its precise meaning. We must deal with the question outside of the act of 1860. We have, then, the case of a sale of real estate where the same person is both vendor and vendee. The law under such circumstances is well settled. The sale is not void; it is merely voidable, and this marks the difference between this transaction and the one referred to in Milford Bor. v. Water Co., supra. In the present case, it appears, as we learn from the opinion of the learned judge below, "that a new and entirely disinterested board, with full knowledge of all the facts and circumstances, have, by a solemn preamble and resolution, fully ratified the action of the old board." We regard this as conclusive of the case, and if we had reached a different conclusion, if we regarded this transaction void under the act of 1860, we could not reverse this decree for the want of proper parties.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

On March 23, 1891, a motion for a re-argument was refused.