**KEYSTONE FREIGHT
CORPORATION,**
Appellant

v.

**Susan STRICKER and Michael T. Sellers, Esquire and Kardos, Rickles, Bidlingmaier & Bidlingmaier f/k/a Kardos Rickles Sellers & Hand, Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 23, 2011.

Filed Oct. 12, 2011.

Reargument Denied Dec. 14, 2011.

Joseph F. Longo, Philadelphia, for appellant.

Jeffrey B. McCarron, Philadelphia, for appellees.

BEFORE: BOWES, ALLEN, and PLATT *, JJ.

* Retired Senior Judge assigned to the Superior Court.

OPINION BY BOWES, J.:

Keystone Freight Corporation ("Keystone Freight") appeals the order entered on May 13, 2010, wherein the Philadelphia Court of Common Pleas granted summary judgment in favor of Susan Stricker ("Stricker"), Michael T. Sellers, Esquire ("Sellers") and Kardos, Rickles, Bidlingmaier & Bidlingmaier f/k/a Kardos, Rickles, Sellers & Hand ("Kardos") (hereinafter referenced together as "Appellees") and dismissed Keystone Freight's Dragonetti action for wrongful use of civil proceedings pursuant to 42 Pa.C.S. § 8351.[1] We affirm.

The facts and procedural history relevant to this appeal are as follows. On the morning of April 24, 2000, eighty-one-year-old Stanley Zalinski was involved in a fatal motor vehicle collision with a tractor-trailer owned and operated by Keystone Freight. After finding Zalinski unconscious in the driver's seat, emergency medical personnel transported him to the hospital where he was later pronounced dead. Bucks County Coroner, Dr. Raafat Ahmad, M.D., performed an autopsy on Zalinski and determined that he died of natural causes due to "[a]cute cardiac arrhythmia due to severe atherosclerotic heart disease." Appellees' Motion for Summary Judgment, 1/4/10, Exhibit D. Dr. Ahmad concluded that the decedent sustained a heart attack that rendered him unconscious behind the wheel and caused his vehicle to collide into the rear of the tractor-trailer.

Middletown Township Police Officer Michael Lubold investigated the accident and attended Zalinski's autopsy. Officer Lubold concluded that the collision should be attributable to Zalinski's medical condition. During his investigation, Officer Lubold interviewed Abad Garach–Munoz, the driver of the truck, along with Amy Gerth, the sole eyewitness to the collision.

At the scene of the accident, Gerth told police officers she saw the tractor-trailer in a driveway area near a loading dock and noticed that it was moving backward from the dock area into traffic. Gerth explained that she observed Zalinski's vehicle quickly traveling west in the traffic way, and that it did not slow down for the truck obstructing its path. Gerth then stated that Zalinski's vehicle collided with the rear of the trailer.

Officer Lubold contacted Gerth two days after the accident to review the statement she provided at the scene. During this interview, Gerth told Officer Lubold that she could recall nothing else about the accident and that her original statement was accurate to the best of her recollection. Gerth added, however, that she heard the engine of Zalinski's car accelerating up to the point of the collision. In a subsequent statement taken on December 13, 2001, Gerth denied hearing the sound of Zalinski's engine accelerating at any point.

Garach–Munoz also provided varying accounts of the operation of his truck at the moment of impact. Garach–Munoz first stated he had stopped backing up and was moving forward when the impact occurred. He later said he was stopped and preparing to move forward when the impact occurred.

Appellees solicited an opinion from accident reconstruction specialist James Halikman as to the nature of the April 24, 2000 accident. Halikman rendered his analysis on June 28, 2000, after taking into account

1. Although the order was dated March 30, 2010, it was not entered on the trial court docket until May 13, 2010.

the police accident report, photographs taken by the police department, an interview of Officer Lubold, and a personal study of the accident scene. Halikman concluded that Garach–Munoz's actions were careless, violated section 3702(a) of the Pennsylvania Vehicle Code,[2] and were the cause of the ensuing collision.

In addition to disagreement as to the cause and manner of the collision, there was a dispute among forensic experts as to the cause and manner of Zalinski's death. Dr. Richard Callery, Chief Medical Examiner in the State of Delaware, controverted Dr. Ahmad's determination that Zalinski's cause of death was natural. Dr. Callery opined that the overwhelming body of evidence, including the extent of damage to Zalinski's vehicle, the severity of Zalinski's injuries, and "the absence of any compelling competing cause of death, other that [sic] pure speculation" suggested that Zalinski died of multiple blunt force injuries, and that the manner of his death was accidental. Appellees' Motion for Summary Judgment, 1/4/10, Exhibit G.

Upon receiving Dr. Callery's report, Appellees requested that the Bucks County Coroner's Office review the case and reconsider Dr. Ahmad's findings with respect to Zalinski's death. Bucks County Coroner, Dr. Joseph Campbell, sent the file to Dr. Halbert Fillinger of Forensic Associates of Philadelphia. When Sellers learned that there would be an analysis by Dr. Fillinger, Sellers wrote a memorandum to his client file which stated he would have to wait and see Dr. Fillinger's report, "and send it to Dr. Callery for his review before evaluating whether we even have a case at this point, given Dr. Filling-

er's reputation." *See* Appellant's Response to Appellees' Motion for Summary Judgment, 2/3/10, Exhibit Q. Dr. Fillinger concurred with Dr. Ahmad's findings and concluded that Zalinski died of natural causes and not of blunt force injuries sustained in the collision. Appellees provided Dr. Fillinger's report to Dr. Callery to determine if it affected Dr. Callery's opinion. In a supplemental expert report rendered on February 20, 2002, Dr. Callery remained convinced that Zalinski died from injuries sustained in the collision, and that his death was accidental.

On March 22, 2002, Kardos, on behalf of Cheryl Van Arsdale,[3] executrix of the Estate of Stanley Zalinski, commenced survival and wrongful death actions against Keystone Freight and Garach–Munoz. Appellees asserted that Keystone Freight and Garach–Munoz were negligent for failing to exercise ordinary care when operating the truck involved in the collision with Zalinski.

At the close of the trial, the trial court declined to instruct the jury regarding the survival action because Appellees' evidence was insufficient to establish that damage element for that cause of action, *i.e.*, Zalinski's conscious pain and suffering. The wrongful death claim was given to the jury for deliberation. The jury returned a verdict in favor of Keystone Freight on May 9, 2008.

On September 4, 2008, Keystone Freight filed the instant action arising under the Dragonetti Act's provision against the wrongful use of civil proceedings pursuant to 42 Pa.C.S. § 8351. Keystone Freight alleged that Appellees acted in a grossly negligent manner and without probable

---

**2.** 75 Pa.C.S. § 3702(a) provides: "No driver shall back a vehicle unless the movement can be made with safety and without interfering with other traffic and then only after yielding

the right-of-way to moving traffic and pedestrians."

**3.** Stricker was substituted as the executrix of the estate following Ms. Van Arsdale's death.

cause because they knew or should have known that Zalinski's death was the result of a heart attack and, as such, any cause of action against Keystone Freight was improper. Sellers and Kardos moved for summary judgment on January 4, 2010, to which Stricker filed a joinder. Keystone Freight opposed Appellees' Motion for Summary Judgment, which was ultimately granted on March 30, 2010.

The sole issue on appeal is whether the trial court properly granted Appellees' motion for summary judgment in holding that Keystone Freight did not establish that Appellees lacked probable cause, or acted with gross negligence in initiating or continuing the underlying proceeding, and that Keystone Freight did not establish Appellees acted with an improper purpose.[4] We uphold the trial court's determination.

■ Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *Capek v. Devito*, 564 Pa. 267, 767 A.2d 1047, 1048 n. 1 (2001). As with all questions of law, our review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.

"Failure of a non-moving party to adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law." *Young v. PennDOT*, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 615 A.2d 303, 304 (1992).

■ The wrongful use of civil proceedings is a tort arising when a person institutes civil proceedings with a malicious motive and lacking probable cause. *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 191 (1993). Pennsylvania's codification of the tort, commonly referred to as the Dragonetti Act, is described in pertinent part as follows:

§ 8351. **Wrongful use of civil proceedings**

(a) **Elements of action.**—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

4. As we conclude that Keystone Freight did not establish the probable cause or improper purpose elements of its Dragonetti claim, we do not address the concomitant issue relating to damages for lost compensation.

42 Pa.C.S. § 8351. The statute defines the existence of probable cause as follows:

### § 8352. Existence of probable cause

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352. In order to prevail on a claim of wrongful use of civil proceedings, Keystone Freight must show that Appellees maliciously instituted proceedings against it, that Appellees lacked probable cause to institute the proceedings, and that the proceedings terminated in favor of Keystone Freight. *Meiksin v. Howard Hanna Co., Inc.,* 404 Pa.Super. 417, 590 A.2d 1303 (1991).

■ It is irrefutable that the proceedings underlying the instant action terminated in favor of Keystone Freight. Civil proceedings may be terminated in favor of the person against whom they are brought by the favorable adjudication of the claim by a competent tribunal. Restatement (Second) of Torts § 674, cmt. j (1977). In the underlying matter, a jury rendered a verdict in favor of Keystone Freight and the trial court entered judgment in its favor.

■ Absence of probable cause is an indispensable element of a Dragonetti claim, and it is not conclusively established by a jury verdict in the prior proceeding. *Meiksin, supra* at 1304. Keystone Freight bears the burden of proving that the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties, or adjudication of the claim on which the proceedings were based. 42 Pa.C.S. § 8354(4).

■ In its memorandum opinion granting Appellees' motion for summary judgment, the trial court stated:

Keystone Freight's answer to the motion for summary judgment does not proffer any evidence which justifies a claim for lack of probable cause. Keystone Freight's sole contention is that ... [Appellees] knew or should have known that their case was meritless.

Keystone Freight further maintains that because of its medical experts and [Officer Lubold's testimony] stating that Mr. Zalinski was dead or unconscious before the crash, [Appellees] should have known that their underlying claim lacked probable cause. However, this argument fails too because [Appellees] had the expertise of [Dr.] Callery supporting their contention which made their claim cognizable. But for the ability of experts to stand in opposition, the civil, legal world would be at best exceptionally uncontroversial and at worst unneeded. Furthermore, Keystone Freight has not provided any evidence to contend that [Appellees] knew their claim was meritless.

Trial Court Opinion, 3/30/10, at 6. We agree.

Keystone Freight has produced not a scintilla of evidence to show that Appel-

lees' survival and wrongful death action was commenced primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based. 42 Pa.C.S. § 8351(a)(1). Keystone has neither presented evidence of any personal *animus* by Appellees against Keystone Freight, nor evidence of any improper motive for the commencement of the underlying action.

To the contrary, Appellees' survival and wrongful death action was founded upon Halikman's accident reconstruction testimony as to the cause and manner of the collision and Dr. Callery's medical testimony as to the cause and manner of Zalinski's death. Such testimony amounted to evidence that the negligence of the truck driver caused the collision and that the collision caused Zalinski's death. It is clear that Appellees believed in the existence of the facts upon which their claim was based and reasonably believed that under those facts their claim was cognizable under existing tort law. 42 Pa.C.S. § 8352(1).

■■■ Insofar as attorney liability is concerned, "as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case." *Morris v. DiPaolo*, 930 A.2d 500, 505 (Pa.Super.2007). "Lawyers can safely act upon the facts stated by their clients." *Meiksin, supra* at 1307. Keystone Freight has not produced sufficient evidence to show that Sellers or Kardos believed that Stricker's claims would be unsuccessful. Keystone Freight relies solely on a memorandum written by Sellers regarding Dr. Fillinger's determination as to Zalinski's cause of death. Keystone Freight argues that this memorandum evidences that Appellees knew or should have

known that their case was meritless. The trial court stated:

> ... this contention is taken out of context of the entire memorandum written by Mr. Sellers. In the memorandum, Mr. Sellers explicitly writes that he will look into the matter further. At which point, Mr. Sellers contacts [Dr.] Callery again, and [Dr.] Callery writes a supplemental report in which he maintains his previous medical assessment that Mr. Zalinski died from blunt force injuries.

Trial Court Opinion, 3/30/10, at 6. We agree with the trial court that evidence of this memorandum is insufficient to show that Appellees knew or should have known that their claim was meritless. Accordingly, we hold that Appellees had probable cause to believe they could prevail on their claims, and as such, Appellees had probable cause for procuring, initiating, and continuing civil proceedings against Keystone Freight.

■■■ The presence of probable cause, however, does not necessarily defeat the entire cause of action for wrongful use of civil proceedings, as "the clear language of Section 8351 permits a cause of action to be based on gross negligence **or** lack of probable cause." *Buchleitner v. Perer*, 794 A.2d 366, 378 (Pa.Super.2002) (quoting *Bannar v. Miller*, 701 A.2d 242, 249 (Pa.Super.1997)) (emphasis added). Gross negligence is defined as the want of even scant care and the failure to exercise even that care which a careless person would use. *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa.Super.2001).

■■■ Appellees' factual and legal presentations in the underlying litigation preclude a finding that Appellees acted with gross negligence in initiating and continuing the underlying lawsuit. No finder of fact could conclude that, in initiating and continuing the underlying litigation, Appellees failed to exercise even that care which

a careless person would use. Appellees presented carefully reasoned arguments supported by expert testimony. It does not follow that Appellees were grossly negligent in initiating and continuing the underlying action simply because they did not prevail. Keystone Freight cannot establish that the commencement of the underlying action was grossly negligent.

For the foregoing reasons, we affirm the order entered by the trial court dismissing Keystone Freight's Dragonetti action pursuant to 42 Pa.C.S. § 8351.

Order affirmed.