## Wickersham Construction and Engineering, Inc. v. Williamsport Sanitary Authority

*Theodore A. Adler*, for plaintiff.
*Dian M. Tokarsky* and *Michael H. Collins*, for defendant.

GRAY, *J.*, May 7, 2014—

## OPINION AND ORDER

And now, this 7th day of May, 2014, following oral argument on the plaintiff's motion for summary judgment, and after review of the argument, pleadings, motion, response and briefs, the court finds that summary judgment is not warranted. The court enters the following opinion and order.

### Procedural and Factual Background

This matter arises from a contract dispute. The plaintiff, Wickersham Construction and Engineering, Inc. ("Wickersham") was the successful bidder and awarded a contract by defendant Williamsport Sanitary Authority ("WSA") for "Contract C2-Combined Sewer Overflow compliance." The parties entered into that construction contract ("contract") with an effective date of November 24, 2009. The contract pertained to the first in a series of construction projects that were required for WSA to comply with a consent decree entered with the Pennsylvania Department of Environmental Protection (DEP) and United States Environmental Protection Agency (EPA). Regulations

required the WSA to reduce the nutrients discharged into the Susquehanna River. The time requirements set forth in the contract were crucial because they were set up for the WSA to avoid severe financial penalties under the consent decree. As the first of the construction projects, Wickersham's failure to meet time the requirements would likely backlog the subsequent contractors who were required to build upon the foundations constructed by Wickersham.

On November 26, 2013, Wickersham filed for summary judgment under Count I, Breach of Contract (Failure to Pay Wickersham its Contract Balance), asserting an unpaid balance of $784.260.[1] Wickersham avers in Count I that the value of the contract with approved change orders was $9,006,056.[2] WSA paid Wickersham $8,221,796. Wickersham claims payment in full was due on or about August 11, 2011. WSA avers that "[f]rom the inception of the project, Wickersham failed to perform its work in a timely fashion and in accordance with the contract documents and project schedule prepared by Wickersham." Defendant's new matter, ¶ 113. The substantial completion date for the contract was extended from February 24, 2011 to March 21, 2011. Nonetheless, Wickersham did not reach substantial completion until June 17, 2011. The final completion for the contract was May 20, 2011. However, the final completion of the contract was not achieved until July 11, 2011.

WSA withheld liquidated damages in the amount of $556,000 and contractual and special damages (relating to additional engineering and inspection costs) in the amount of

---

1. This matter was commenced by a writ of summons filed April 1, 2011. Wickersham filed a complaint on August 31, 2012 and an amended complaint on October 18, 2012. WSA filed an answer with new matter on December 13, 2012. Wickersham filed a reply to new matter on January 28, 2013. Wickersham served a request for admissions on October 11, 2013. No response to those requests was filed within thirty days.

2. WSA avers in its answer that the value of the contract with approved change orders was $9,006,055.89.

$205,907.43. Malcolm Pirnie, Inc. (Pirnie) served as engineer for the project. By letters dated April 11, 2011, May 5, 2011, June 3, 2011, July 20, 2011 (copied to Wickersham), Pirnie advised WSA about its recommendation for the withholding of liquidated damages. WSA withheld liquidated and special damages in accordance with Pirnie's recommendations. The final amount withheld was $789,259.75. No party filed a "claim" with respect to the liquidated or special damages. Wickersham did not assert that the WSA was required to file a claim to withhold damages at the time of the withholding of damages by WSA.

The contract consists of more than a hundred pages. The contract includes the first part called the "agreement," consisting of 9 pages and 10 articles, with Article 9 incorporating the following documents as "contract documents:" the agreement, performance bond (2 pages), payment bond (3 pages) stipulation against liens (1 page), general conditions (54 pages), supplementary conditions (17 pages and attachments), specifications, as listed in the table of contents of the project manual, set of drawings, addenda numbered 1 through 3, exhibits, notice to proceed, work change directives and change orders that have or may be issued.

The first part of the contract is labeled the "agreement." It consists of 9 pages and was signed by both parties. It includes Article 4 entitled "CONTRACT TIMES." Article 4.01 provides that "*[a]ll time limits* for Milestones, if any, Substantial Completion and completion and readiness for final payment as stated in the Contract Documents *are of the essence* of the Contract." (emphasis added) Article 4.02A sets forth the contract times and specifically references paragraph 2.03 of the general conditions with respect to the commencement of contract times and paragraph 14.07 of the general conditions which outlines the procedures for application for final payment.

Article 4.03 of the contract provides for liquidated damages as follows.

Owner and Contractor recognize that *time is of the essence* of this agreement and *owner will suffer financial loss*, apart from the costs described in Paragraph 4.04A, if the work is not substantially completed within the time specified in Paragraph 4.02A for Substantial Completion, plus any extensions thereof allowed in accordance with Article 12 of the General Conditions. Owner and Contractor also recognize the delays, expense and difficulties involved in proving in a legal or arbitration proceeding the actual loss suffered by Owner if the Work is not substantially completed on time. Accordingly, instead of requiring any such proof, Owner and Contractor *agree that as liquidated damages for delay (but not as a penalty) Contractor shall pay Owner $5,500.00 for each day that expires after the time specified* in Paragraph 4.02.A for Substantial Completion (adjusted for any changes thereof made in accordance with Article 12 of the General Conditions) until the Work is Substantially Complete. Subsequent to achieving Substantial Completion (adjusted for any changes thereof made in accordance with Article 12 of the General Conditions) until the Work is Substantially Complete. Subsequent to achieving Substantial Completion, Owner and Contractor agree *that as liquidated damages for delay (but not as penalty) Contractor shall pay Owner $3,000.00 for each day that expires after the time specified* in Paragraph 4.02.A for final payment (adjusted for any changes thereof made in accordance with Article 12 of the General Conditions) until the Work associated with final payment is complete. (emphasis added)

Article 4.04A of the contract provides for special damages as follows.

In addition to the amount provided for liquidated damages,

*Contractor shall pay Owner the actual costs reasonably incurred by owner* for engineering and inspection forces employed for the Work for each day that expires after the time specified in Paragraph 4.02A for Substantial Completion (adjusted for any changes thereof made in accordance with Article 12 of the General Conditions until the Work is substantially complete)(emphasis added).

Article 4.05 of the contract provides that the "owner may deduct liquidated damages and special damages as determined by the provisions of this article 4 from progress payments due Contractor under this Agreement." Article 4 *does not* make any reference to filing of claims or Article 10 of the General Conditions which outlines the procedures for filing claims.

Article 9 of the Agreement incorporates the document entitled General Conditions. The General Conditions document consists of 54 pages and was adapted from "Standard General Conditions of the Construction Contract, EJCDC No. C-700 (2002 Edition)." That document is not signed or initialed. Article 1, Section 1.01 of the General Conditions sets forth defined terms. Section 1.01 A. 10 defines "Claim" as a "demand or assertion by Owner or Contractor seeking an adjustment of Contract Price or Contract Times, or both, or other relief with respect to the terms of the Contract. A demand for money or services by a third party is not a Claim." Section 1.01.A. 13 of the General Conditions of the contract defines *contract price* as: "*The monies payable by Owner to Contractor for completion of the Work* in accordance with all Contract Documents as stated in the Agreement (subject to the provisions of 11.03 in the case of Unit Price Work)." (emphasis added). Section 1.01 does not define liquidated or special damages.

Section 10.05 of the general conditions is entitled "CHANGES IN THE WORK; CLAIMS." Section 10.05.A provides the following.

Engineer's Decision Required: All Claims, except those waived pursuant to Paragraph 14.09 (inapplicable to the instant case), shall be referred to the Engineer for a decision. A decision by Engineer shall be required as a condition precedent to any exercise by Owner or Contractor of any rights or remedies either may otherwise have under the Contract Documents of by laws and regulations in respect of such claims."

Section 10.05.B of the General Conditions requires written notice of each claim be submitted to the engineer and the other party promptly (but in no event later than thirty days) after the start of the event giving rise thereto. Section 10.05 B. further provides as follows.

The Responsibility to substantiate a Claim shall rest with the party making the claim. Notice of the amount or extent of the Claim, with supporting data shall be delivered to the Engineer and the other party to the Contract within 60 days after the start of such event (unless Engineer allows additional time for claimant to submit additional or more accurate data in support of such Claim). A Claim for an adjustment in Contract Price shall be shall be prepared in accordance with the provisions of Paragraph 12.01.B. A claim for an adjustment in Contract Times shall be prepared in accordance with the provisions of Paragraph 12.02.B. Each Claim shall be accompanied by claimant's written statement that the adjustment claimed is the entire adjustment to which the claimant believes it is entitled as a result of said event. The opposing party shall submit any response to Engineer and the claimant within 30 days after receipt of the claimant's last submittal (unless Engineer allows additional time).

Section 10.05 C-E provide for the engineer to review each claim and take action. The engineer's written action or denial is final and binding unless a party timely invokes the dispute

resolution procedure set forth in Article 16. Section 10.05 F. provides that "No Claim for an adjustment in Contract Price or Contract Times will be valid if not submitted in accordance with this Paragraph 10.05." Liquidated or special damages *are not* mentioned in Section 10.05 or in Article 10.

## Conclusions of Law

### Summary Judgment

1. Pursuant to Pa. R.C.P. 1035.2, the court may grant summary judgment at the close of the relevant proceedings if there is no genuine issue of material fact or if an adverse party has failed to produce evidence of facts essential to the cause of action or defense. *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 971 (Pa. Super. Ct. 2011).

2. A non-moving party to a summary judgment motion cannot rely on its pleadings and answers alone. Pa. R.C.P. 1035.2; 31 A.3d at 971.

3. When deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, with all doubts as to whether a genuine issue of material fact exists being decided in favor of the non-moving party. 31 A.3d at 971.

4. If a non-moving party fails to produce sufficient evidence on an issue on which the party bears the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Keystone*, 31 A.3d at 971 (citing *Young v. Pa. Dep't of Transp.*, 744 A.2d 1276, 1277 (Pa. 2000)).

### Contract

5. "The task of interpreting a contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Humberston v.*

*Chevron U.S.A., Inc.*, 75 A.3d 504, 510 (Pa. Super. Ct. 2013), quoting, *Maguire v. Ohio Casualty Ins. Co.*, 602 A.2d 893, 894 (Pa. Super. 1992).

6. "When construing agreements involving clear and unambiguous terms, this court need only examine the writing itself to give effect to the parties' understanding. This court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation. *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 510 (Pa. Super. Ct. 2013), quoting *Szymanowski v. Brace*, 987 A.2d 717, 722 (Pa. Super. 2009) (quoting *Abbott v. Schnader, Harrison, Segal & Lewis, LLP*, 805 A.2d 547, 553 (Pa. Super. 2002) (internal citations omitted)).

7. "[W]here a contract refers to and incorporates the provisions of another, both shall be construed together. *Trombetta v. Raymond James Fin. Servs.*, 907 A.2d 550, 560 (Pa. Super. Ct. 2006), citing, *Shehadi v. Northeastern Nat'l. Bank*, 378 A.2d 304, 306 (1977) (citations omitted).

8. It is well-settled that clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects. *Brown v. Cooke*, 707 A.2d 231, 233 (Pa.Super. 1998), quoting *In re Binenstock's Trust*, 190 A.2d 288 (1963). Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement. *Id.*]

9. "[T]he specific controls the general when interpreting a contract." *Trombetta v. Raymond James Fin. Servs.*, 907 A.2d 550, 560 (Pa. Super. Ct. 2006), citing, *Baltic Dev. Co. v. Jiffy Enterprises, Inc.*, 257 A.2d 541, 543 (1969), citing, *In re Alloy Mfg. Co. Employees Trust (Minotte Appeal)*, 192 A.2d 394 (1963).

10. "[W]here specific or exact terms seem to conflict with broader or more general terms, the former is more likely to

express the meaning of the parties with respect to the situation than the general language." *Pbs Coal v. Hardhat Mining*, 632 A.2d 903, 906 (Pa. Super. Ct. 1993), citing, Restatement (Second) of Contracts § 203(c) (1981); and *Spatz v. Nascone*, 424 A.2d 929 (1981).

11. "[C]ourse of performance is always relevant in interpreting a writing." *Pennsylvania Engineering Corp. v. McGraw-Edison Co.*, 459 A.2d 329, 332 (Pa. 1983), quoting, *Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 741 n. 6 (1978), *referencing, Accord*, Restatement (Second) of Contracts § 202(4) and Comment a (1981). n6.

12. "Under Pennsylvania law, this court is required to give words their ordinary and popular meaning. As the Supreme Court of Pennsylvania has noted, "[t]he standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract is made, considering all the circumstances surrounding it."" *G&T Conveyor Co. v. Allegheny County Airport Auth.*, 2011 U.S. Dist. LEXIS 123156 (W.D. Pa. Oct. 25, 2011), quoting, *Urian v. Scranton Life Ins. Co.*, 165 A. 21, 22 (1933)

13. "It is a rule of construction of contracts, as well as statutes, that the express mention of one thing implies the exclusion of all others." *Trainer v. Wolfe*, 21 A. 391 (Pa. 1891)

Discussion

The crux of the issue is whether the WSA was required to file a "Claim" under Article 10 of the General Conditions of the contract in order to withhold liquidated and special damages from payment to Wickersham under Article 4 of the agreement in the contract when viewing the record in the light most favorable to the non-moving party. The court concludes that, when viewing the record in the light most favorable to the non-moving party, WSA was not required to file a "Claim" in order to withhold payments for liquidated and

special damages and issues of fact exist. Therefore, summary judgment is denied.

Wickersham asserts that when WSA withheld liquidated and special damages it was seeking an adjustment in contract Price and therefore is subject to the claims procedure under Article 10. This court does not agree that seeking liquidated or special damages constitutes seeking an adjustment in contract price as those terms are defined in the contract or under their plain meaning. The contract defines contract price as "[t]he *monies payable by owner to contractor* for completion of the work." The contract defines liquidated and special damages as amounts that the "contractor shall pay owner." *See,* Article 4.03 (liquidated) and 4.04A (special) of the agreement. Since neither liquidated nor special damages constitute money payable by the owner to the contractor, the collection of such damages does not constitute an adjustment in contract price which would require the filing of a claim.[3]

---

3. The court does not believe that in *In RCR Building Corp. v. Pinnacle Hospitality Partners,* 2012 WL 5830587 (Tenn. Ct. App. Nov. 15, 2012) (cited by plaintiff in support of summary judgment) is persuasive in this matter because it is distinguishable from the instant case. *In RCR Building Corp.* involved an owner seeking liquidated damages for missing a deadline. The contractor blamed the owner for delays. The owner did not deduct any amounts for liquidated damages for several months after the missed deadline. After the missed deadline, but upon completion of the contract, the parties agreed to the amount of final payment on December 10, 2008. On March 26, 2009, after the parties had already agreed to the final payment, the owner notified the contractor for the first time of its intent to seek liquidated damages for the passing of the deadline that occurred in May 2008. In the present case, by contrast, the owner timely notified the contractor of its withholding of liquidated damages from progress payments. The withholding occurred from progress payments. The parties did not agree upon an amount of final payment after the missed deadlines and then seek damages as it did in *In RCR Building Corp.* Furthermore, the delays in this case must be viewed as solely caused by the contractor and not by the owner.

In deciding that seeking liquidated damages was a claim, the court of appeals of Tennessee focused on the contractual definition of claim which turned on whether the owner sought a payment of money when seeking liquidated damages. In that case, claim was defined as a "demand ... by one of the parties seeking, as a matter of right, ... payment of

This court further notes that Article 4 of the agreement provides for a specific remedy of deducting liquidated and special damages from progress payments. Article 4.05 provides that the "owner may deduct liquidated damages and special damages as determined by the provisions of Article 4 from progress payments due contractor under this agreement." To the extent that such deductions conflict with the claims procedure in Article 10, this court believes that the more specific provisions of Article 4 control. *See, Pbs Coal v. Hardhat Mining*, 632 A.2d 903, 906 (Pa. Super. Ct. 1993) ("[W]here specific or exact terms seem to conflict with broader or more general terms, the former is more likely to express the meaning of the parties with respect to the situation than the general language.)(citations omitted).

Moreover, the failure of Article 4 and Article 10 to reference each other supports the conclusion that Article 4.05 is not subject to the filing of a claim under section 10.05 of the General Conditions. Neither one of these provisions references the other or appears to invoke the other's procedures. At the same time, both contract provisions reference other provisions in the contract as to procedures that should be followed. For example, Article 4.02A specifically references Paragraph 2.03 of the General Conditions with respect to the commencement of contract Times. It also references Paragraph 14.07 of the

money [or] adjustment of the contract sum…" The court concluded that since the owner sought a payment of money when it sought to deduct liquidated damages, it fell within the contract's definition of claim. Notably, the court did not state that seeking liquidated damages would meet the definition of seeking an adjustment in contract price. By contrast, in the present case "claim" is a "demand or assertion by owner or contractor seeking an adjustment of contract price or contract times, or both, …" Contract price is "[t]he monies payable by owner to contractor for completion of the work." Both this court and the court in *In RCR Building Corp.* concluded that seeking liquidated damages is a demand by the owner for money to be paid by the contractor to the owner. Under the contract in In *In RCR Building Corp.*, that made the liquidated damages fall within the definition of a claim, subject to the claims process. In the instant case, it does not.

General Conditions for the procedures for application for final payment. Article 4.03 references Article 12 of the General Conditions with respect to the allowance of extensions for Substantial Completion and adjustments for changes made in accordance with Article 12. Similarly, Article 10 of the General Conditions notes that one of its provisions is "subject to the provisions of 11.03 in the case of Unit Price Work." It also references Paragraph 14.09. Article 10 also specifically states that the engineer's resolution is "binding unless a party timely invokes the dispute resolution procedure set forth in Article 16." The court believes that the express reference to provisions being subject to other provisions in both Article 4 of the agreement and in Article 10 in the General Conditions, coupled with the absence of any such reference in Article 4.05, means that 4.05 is not subject to the filing of a claim. *See, e.g., Trainer v. Wolfe*, 21 A. 391 (Pa. 1891)("It is a rule of construction of contracts, as well as statutes, that the express mention of one thing implies the exclusion of all others.")

Lastly, the court believes that summary judgment is not warranted because fact issues exist. Specifically, if the withholding of liquidated or special damages was subject to Article 10, a fact issues exists as to whether the course of performance or course of dealing between the parties establishes that the parties agreed that the filing of claims was not required for the withholding of liquidated and special damages. "[C]ourse of performance is always relevant in interpreting a writing." *Pennsylvania Engineering Corp., supra* (further citations omitted). In addition, had WSA been required to follow the claims procedure of 12.05, a fact issues exists as to whether WSA substantially complied with its requirements.

The court enters the following order.

## ORDER

And now, this 7th day of May, 2014, it is ordered and directed that summary judgment is denied.