J-A16022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

CARTER WILLIAMS

          Appellant

          v.

ANDERSON EQUIPMENT COMPANY AND
KOMATSU AMERICAN CORPORATION
          V.
JERRY WHITE, ROBERT ROBB & GENE
RAYMAN CONSTRUCTION, INC.

------------------------------------------------

CARTER WILLIAMS

          Appellant
          v.
ROBERT ROBB, GENE RAYMAN
CONSTRUCTION, INC., AND JERRY
WHITE

|

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1454 WDA 2013

Appeal from the Order August 6, 2013
In the Court of Common Pleas of Armstrong County
Civil Division at No(s): No. 2007-01291 & 2009-00217

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:          **FILED OCTOBER 07, 2014**

Carter Williams appeals from the order entered August 6, 2013, in the Armstrong County Court of Common Pleas, granting summary judgment in favor of defendants Komatsu American Corporation ("Komatsu") and Anderson Equipment Company ("Anderson"), and dismissing the actions against them.  The August 6, 2013, order was made final by the trial court's subsequent order, entered September 3, 2013, certifying the former order for appeal pursuant to Pa.R.A.P. 341(c).  On appeal, Williams contends the

trial court erred in granting summary judgment in favor of Komatsu and Anderson. For the reasons set forth below, we affirm.

The facts underlying Williams's claims are summarized by the trial court as follows:

This case arises out of an accident that occurred on or about March 14, 2006. Defendant Robert Robb was operating a wheeled front-end loader construction vehicle manufactured by Komatsu [] and sold to Robb's employer, Gene Rayman Construction, Inc., by Anderson[]. Mr. Robb was driving the loader through Worthington Borough/West Franklin Township on two-lane Butler Road. Robb was returning with the loader to a worksite along a private road that connects with Butler Road. **The loader's brake lights are red and are located directly below a set of amber-colored "flasher" or "hazard" lights. The loader also comes equipped with an additional set of amber-colored hazard/flasher lights that are mounted on stems that protrude from the vehicle's body, making them visible from both the front and back.**

Defendant Jerry White was operating a 1989 Cadillac Coupe DeVille immediately behind the loader. [Williams] was seated in the passenger's seat of the Cadillac. To enter the private road where the worksite was located, Mr. Robb had to make a left-hand turn off of Butler Road. Prior to negotiating the turn, Mr. Robb slowed his pace by steadily pressing the loader's brakes. As Mr. Robb began to make the turn, Mr. White accelerated the Cadillac and attempted to pass the loader on the left side. The Cadillac struck the front bucket of the loader with significant force, causing damage to the Cadillac's hood, windshield, and roof. Both [Williams] and Mr. White were ejected from the vehicle on impact. Both sustained serious injuries.

In his deposition, Mr. White testified several times that he was "100 percent" certain that neither set of amber signal lights were on when he attempted to pass the loader. Although he testified that he saw the "flasher" lights, he further explained that those were the red lights identified on the pictures of the loader and not the yellow signal or hazard lights. Mr. Robb

- 2 -

made several statements both prior to and at his deposition regarding whether he had activated the yellow hazard lights prior to initiating the left-hand turn. In statements made to an insurance representative and to his boss, Charles Boggs, Mr. Robb stated that he did not have the hazard signals on when he initiated the left turn. At his deposition, approximately five years after making those statements, Mr. Robb testified that he could not remember for sure whether the statements were correct. He also testified at his deposition that he believed that the yellow hazard lights were on at the time when he activated his left turn signal.

Trial Court Opinion, 8/6/2013, at 2-4 (emphasis supplied).

On January 18, 2007, Williams filed a negligence action in Allegheny County against Jerry White (the driver of the Cadillac), Robert Robb (the driver of the front-end loader), and Robb's employer, Rayman Construction Inc. Thereafter, on March 12, 2008, he filed a products liability action in Allegheny County against Komatsu and Anderson, contending the loader was defectively designed. The actions were subsequently transferred to Armstrong County, and consolidated.

Over the ensuing five years, discovery and pleadings were exchanged. Ultimately, on January 22, 2013, Komatsu and Anderson filed a joint motion seeking summary judgment and the preclusion of Williams's expert reports. Specifically, they argued Williams was unable to prove that a defective design in the front-loader caused the accident. On August 6, 2013, the trial court granted the motion for summary judgment, dismissing the action against Komatsu and Anderson, and denying as moot their request to preclude Williams's expert reports. The negligence claims against the other defendants are still pending.

On August 14, 2013, Williams filed a motion for reconsideration, asserting that the trial court improperly made credibility determinations in granting the motion for summary judgment.[1] The trial court denied the motion on August 16, 2013. That same day, Williams made an oral motion requesting that the trial court certify its August 6, 2013, order as a final order pursuant to 42 Pa.C.S. § 702(b).[2] The trial court denied Williams's oral motion on August 27, 2013.

Thereafter, on August 30, 2013, Williams filed an application for a determination of finality pursuant to Pennsylvania Rule of Appellate Procedure 341(c). On September 3, 2013, the trial court granted Williams's application, and deemed its August 6, 2013 order "final and immediately appealable to the Superior Court of Pennsylvania." Order, 9/3/2013. This timely appeal followed.[3]

---

[1] That motion was not entered on the docket until August 19, 2013.

[2] The statute permits a trial court to certify an otherwise interlocutory order as a final order when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter[.]" 42 Pa.C.S. § 702(b)

[3] On September 9, 2013, the trial court ordered Williams to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Williams complied with the court's directive and filed a concise statement on September 27, 2013.

Preliminarily, we address the argument of Komatsu and Anderson that this appeal should be quashed because the trial court improperly certified its August 6, 2013, order as a final order pursuant to Rule 341(c). *See Bailey v. RAS Auto Body, Inc.*, 85 A.3d 1064, 1067-1068 (Pa. Super. 2014) ("The appealability of an order directly implicates the jurisdiction of the court asked to review the order.") (quotation omitted).

Rule 341 defines a final, appealable order as one that disposes of all claims and of all parties, or one that is expressly defined as final by statute. Pa.R.A.P. 341(b). An order, such as the one here, granting summary judgment in favor of some, but not all defendants is not a final order since it does not dispose of all claims and all parties. *See* Pa.R.A.P. 341, Note; *Spuglio v. Cugini*, 818 A.2d 1286, 1287 (Pa. Super. 2003) (holding that "orders granting preliminary objections and disposing of only some but not all of the underlying parties or claims are interlocutory and unappealable.").

However, a party that wishes to appeal an interlocutory, non-appealable order, such as the one *sub judice*, may seek a determination of finality by the trial court, as provided in subsection (c), in relevant part:

> (c) Determination of finality. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon **an express determination that an immediate appeal would facilitate resolution of the entire case**. Such an order becomes appealable when entered.

- 5 -

Pa.R.A.P. 341(c) (emphasis supplied). The Note to Rule 341(c) further states:

> Factors to be considered under Subdivision (c) include, but are not limited to:
>
>> (1) whether there is a significant relationship between adjudicated and unadjudicated claims;
>>
>> (2) whether there is a possibility that an appeal would be mooted by further developments;
>>
>> (3) whether there is a possibility that the court or administrative agency will consider issues a second time;
>>
>> (4) whether an immediate appeal will enhance prospects of settlement.

Pa.R.A.P. 341, Note. This Court has emphasized that "[t]rial courts must consider all four factors when making a determination of finality." **Bailey**, **supra**, 85 A.3d at 1069, *citing* **Pullman Power Products of Canada Ltd. v. Basic Engineers, Inc.**, 713 A.2d 1169, 1173 (Pa. Super. 1998). Moreover, a determination of finality should be made "only in the most extraordinary circumstances" such as "where the failure to do so would result in an injustice which a later appeal cannot correct." **Bailey**, **supra**, 85 A.3d at 1069, *quoting* **Robert H. McKinney, Jr., Associates, Inc. v. Albright**, 632 A.2d 937, 939 (Pa. Super. 1993).

In the present case, the trial court provided the following rationale for its decision to certify its August 6, 2013, order as immediately appealable:

> [T]he Court finding [(1)] based on [Williams's] representation that the remaining Defendants in this case have tendered their policy limits in agreement to settle the case, [and (2)] based on

- 6 -

> [Williams's] representation that [Williams] will be unable to execute a settlement and release of claims with those Defendants without also releasing the claims against Defendants Anderson and Komatsu, … that an immediate appeal of the Court's August 6, 2013 Order would expedite the disposition of the entire case so as to prevent the potential necessity of conducting two trials in this matter in the event that the Court's Order is reversed on appeal after trial [is conducted] against the remaining Defendants, NOW THEREFORE, the Court expressly finds and determines that an immediate appeal of its August 6, 2013 Order will facilitate resolution of the entire case[.]

Order, 9/3/2013.

Komatsu and Anderson argue, however, that permitting an immediate appeal will not expedite the disposition of the entire case, because Williams has failed to demonstrate the requisite "extraordinary circumstances" to justify an immediate appeal. Komatsu/Anderson Brief at 14. Further, they emphasize Williams has already rejected the settlement offers tendered by the other defendants. *Id.* at 13 Moreover, Komatsu and Anderson assert that the court's certification of the order pursuant to Rule 341(c) is inconsistent with its prior ruling refusing to certify the appeal as final pursuant to 42 Pa.C.S. § 702(b). *Id.* at 14.

We detect no basis upon which to disturb the ruling of the trial court that "an immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(c). The court acted within its discretion when it accepted Williams's representation that he rejected the settlement offers of the remaining defendants because they required him to sign a general release, which would have included his claims against Komatsu and Anderson. ***See*** Application for Determination of Finality, 8/30/2013, at ¶ 8. While the

claims against Komatsu and Anderson involve different causes of action than those against the remaining defendants, they all originate from the same motor vehicle accident. Furthermore, should the order granting summary judgment be reversed **after** trial against the remaining defendants, Williams would be forced to re-try the case on the merits.

Moreover, we summarily reject the claim of Komatsu and Anderson that the trial court's Rule 341(c) certification was inconsistent with its prior refusal to certify the appeal pursuant to Section 702(b). Certification pursuant to the latter statute requires the trial court to determine that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion[.]" 42 Pa.C.S. § 702(b). No such claim is involved in this appeal. Therefore, since we decline to disturb the trial court's "express determination that an immediate appeal would facilitate resolution of the entire case,"[4] we proceed to a discussion of the sole substantive claim raised by Williams on appeal.

Williams contends the trial court erred in granting summary judgment in favor of Kamatsu and Anderson because the court usurped the function of a jury, and based its decision on improper factual and credibility determinations. Further, he argues "[t]he allegations of the [c]omplaint

_____

[4] Pa.R.A.P. 341(c).

[are] supported both by the report of a liability expert … and the testimony of factual witnesses." Williams's Brief at 10.

When reviewing a motion for summary judgment, we "may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." ***Murphy v. Duquesne U. Of The Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001), *citing **Capek v. Devito***, 767 A.2d 1047, 1048, n.1 (Pa. 2001).

> As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.

***Keystone Freight Corp. v. Stricker***, 31 A.3d 967, 971 (Pa. Super. 2011) (internal citations omitted). ***See also*** Pa.R.C.P. 1035.2.

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Jones v. Levin***, 940 A.2d 451, 453-54 (Pa. Super. 2007) (internal citations and footnote omitted). In making this determination, we will "view the record in the light most favorable to the non-moving party, and all doubts as

to the existence of a genuine issue of material fact must be resolved against the moving party." **Keystone Freight Corp.**, **supra**, 31 A.3d at 971.

In the present case, Williams contends the front loader, manufactured by Komatsu and distributed by Anderson, contained a design defect, namely, "the same flasher bulbs were used for both the turn signals and the hazard lights." Williams's Brief at 10. He asserts that, because the turn signals and hazard lights were not "clearly identifiable and discernable from one another," the driver of a vehicle traveling behind the front loader would not be alerted that the machine was preparing to turn if the hazard lights were also activated. **Id.**

Williams's allegations state a products liability claim for a design defect.

> Pennsylvania courts have long "recognized a plaintiff's right to pursue an action in strict liability against the manufacturer of a product pursuant to section 402A of the Restatement (Second) of Torts. A plaintiff presents a *prima facie* case of strict liability by establishing that the product was defective and that **the product caused the plaintiff's injury**.

**Wiggins v. Synthes (U.S.A.)**, 29 A.3d 9, 14 (Pa. Super. 2011) (emphasis supplied). **See also Davis v. Berwind Corp.**, 640 A.2d 1289, 1295 (1994), *aff'd*, 547 Pa. 260, 690 A.2d 186 (1997) (explaining that, to prevail in a design defect case, "a plaintiff must establish: (1) that the product was defective; (2) that the defect existed when it left the hands of the defendant; and (3) that the defect caused the harm.").

In granting summary judgment, the trial court explained the basis of its ruling as follows:

Our review of the record, in the light most favorable to [Williams], indicates that [Williams] has provided some evidence, via the testimony of Mr. Robb, that [Robb] activated the yellow hazard lights prior to making the left-hand turn. [Robb] also testified that he activated his left turn signal. Taken by itself, this testimony could potentially be sufficient to create a disputed issue of fact with regard to whether both the turn signal and the hazard signal lights were activated simultaneously just before Mr. White attempted to pass the loader. Any issues regarding credibility or reliability of Mr. Robb's testimony, in light of his prior inconsistent statements, would be resolved by the trier of fact.

We also note, however, that Mr. White, the operator of the vehicle in which [Williams] was a passenger, **testified that he is "100 percent" sure that the only lights he saw prior to or while passing the loader were the red brake lights. He did not see the amber-colored lights located either directly above the red brake lights or those mounted on stems on the sides of the loader.** He further testified, in response to a leading question by counsel, that it was possible that the amber-colored signal lights could have been flashing but he didn't notice them because of their proximity to the red brake lights. However, given Mr. White's unequivocal testimony that he never saw any activated amber-colored signals on the loader, including those mounted on the side, we find Mr. White's answer to counsel's leading question to be insufficient to create a genuine issue of material fact. **Indeed, to create a genuine issue of material fact regarding proximate causation, [Williams] must adduce evidence showing both that the amber hazard lights had been activated *and* that Mr. White saw them prior to making his attempted pass.** Otherwise, the alleged defect in the loader's lighting is entirely immaterial to the accident.

Although we must review the facts of record in the light most favorable to [Williams] and attribute to [Williams] all reasonable inferences from those facts, **no reasonable inference that Mr. White in fact saw the activated amber-colored hazard lights can be made from the evidence of**

**record.** [Williams's] characterizations of both Mr. Robb's and Mr. White's deposition testimony simply do not offer plausible, let alone reasonable, factual bases on which [Williams] could prove proximate causation. Accordingly, we find that [Williams] has failed to present sufficient evidence in the record to support a *prima facie* case of design defect strict liability.

Trial Court Opinion, 8/6/2013, at 6-8 (emphasis supplied).

Our review of the record reveals no basis to disturb the court's ruling.

Indeed, White testified several times during his deposition that he saw only

**red lights** illuminated on the front-loader before he attempted to pass:

Q. … You testified that prior to the impact you saw the flashers flashing on the front loader. Is that right?
[White:] Yes, I did.

Q. Okay. Do you have any idea where the flashers are on this front loader?

[White:] The ones that were flashing were these ones (indicating).

[ATTORNEY:] **Indicating for the record the red lights in the middle?**

[White:] **Yes.**

* * * *

Q. … The yellow above the red you said was the turn signal. Correct?

[White:] Yes.

Q. **So, is it possible that the turn signal was on?**

[White:] **No.**

Q. Okay. So, you don't believe the yellow light was flashing at all?

[White:] No. Because there were two lights flashing instead of one.

Q. What two lights?

[White:]  Two red lights that I seen.

Q.  **Are you a hundred percent positive that the yellow light was not flashing?**

[White:]  **Yes.**

* * * *

Q.  And I'm going to circle two locations on this loader.  [Circling the turn signal/flasher stems protruding from the side of the front loader]

    Did you see either of those lights flashing as you approached the loader –

[White:]  No.

Q.  – that I've circled?

[White:]  No.

Q.  **Are you 100 percent certain you did not see either of those lights flashing before as you approached the loader?**

[White:]  **Yes.**

Motion for Summary Judgment, 1/22/2013, Exhibit C, Deposition of Jerry A. White, 10/21/2010, at 218, 269, 305 (emphasis supplied).  Therefore, White testified that he did not see the amber/yellow-colored lights illuminated.

Williams contends, however, "there are issues of fact as to whether the hazard lights had been activated at the time of the accident" sufficient to preclude summary judgment.  Williams's Brief at 17.  He explains:

> The testimony of Robert Robb at his deposition confirms that the hazard signal lights were activated at the time of the accident.  Additionally, Jerry White stated at his deposition that he saw the flashers flashing.

- 13 -

Jerry White specifically stated that he saw the flashers flashing, which in fact had to be the flashers and not the brake lights since Robert Robb stated at his deposition that he was not pumping the brakes, but applying them steadily.

*Id.* at 16-17 (record citations omitted and emphasis supplied). Accordingly, Williams asserts the testimony of White and Robb, taken together, leads to a reasonable inference that White saw the amber-colored lights flashing.

For purposes of summary judgment, we must presume, based upon Robb's deposition testimony, that Robb was operating both the amber-colored flashers and the left turn signal, at the time of the accident.[5] ***See*** Plaintiff's Appendix to Response to Motion for Summary Judgment, 2/20/2013, Exhibit B, Deposition of Robert Robb, 3/28/2011, at 93. However, White testified that the **only lights** he saw illuminated on the front-loader were the **red** brake lights, which he described as flashing. In fact, he acknowledged he was "a hundred percent positive that the yellow light was **not** flashing[.]" Motion for Summary Judgment, 6/22/2013, Exhibit C, Deposition of Jerry A. White, 10/21/2010, at 269 (emphasis

_____

[5] We note, however, that Robb's testimony was equivocal at best. He stated, "I'm thinking [the flashers] were on." Plaintiff's Appendix to Response to Motion for Summary Judgment, 2/20/2013, Exhibit B, Deposition of Robert Robb, 3/28/2011, at 93. Moreover, he acknowledged earlier in his deposition testimony that on the night of the accident, he gave a statement to the insurance company indicating that, at the time of the accident, he only had his turn signal activated, and not his four-way flashers. Reply Memorandum of Law in Support of Motion for Summary Judgment, 4/8/2013, Exhibit A, Deposition of Robert Robb, 3/28/2011, at 88-89; Exhibit B, Recorded Statement of Robert Robb, p. 6. However, for purposes of summary judgment, we must view the evidence in the light most favorable to the non-moving party. ***Keystone Freight***, ***supra***.

supplied). *See also id.* at 305. Williams contends that White must be mistaken and a genuine issue of material fact exists as to whether the amber hazard lights were activated, based upon (1) Robb's testimony that he was using his turn signals and flashers, and (2) White's response to a leading question on rehabilitation, where he acknowledged that it was "possible" the yellow lights "could have been flashing on the turn signal" but he did not notice them because they were located so close to the red brake lights. Plaintiff's Appendix to Response to Motion for Summary Judgment, 2/20/2013, Exhibit A, Deposition of Jerry A. White, 10/21/2010, at 220. We do not agree with Williams' contention that this testimony raises a genuine issue of material fact precluding summary judgment.

Regardless of whether the amber-colored turn signal/hazard lights were activated, Williams failed to present any evidence that **White noticed the amber-colored lights were illuminated**, and as a result of the alleged design defect, *i.e.*, that the turn signals and hazard lights were incorporated into the same bulb, **White was confused by them**. Accordingly, Williams presented no evidence that the alleged design defect of the single turn signal/hazard bulb was a **proximate cause** of the accident that resulted in Williams's injuries.

Because we conclude the trial court did not base its decision on improper credibility determinations, and we agree that Williams failed to set

forth a *prima facie* case of products liability, we affirm the order granting summary judgment in favor of Komatsu and Anderson.[6]

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014

_____

[6] We note that, to the extent Williams also asserts a products liability claim based upon the fact that "the bucket, which extended from the front of the [front loader] was hidden from the rear[,]" such claim is waived. Complaint, 5/19/2008, at ¶ 10. Williams failed to develop any argument regarding this alternative design defect in the argument portion of his brief. Indeed, the only mention of the "extended bucket" defect is in (1) a direct quote from his complaint, and (2) a conclusory statement regarding his expert's purported opinion that the "extension on the front that was hidden from the rear … was a threat and hazard to passing motorists which could have been minimized." Williams's Brief at 10, 12. Williams's failure to demonstrate how the "extended bucket" was a proximate cause of the accident, or in what way the trial court erred in granting summary judgment on this claim, waives this issue for our review. ***See Commonwealth v. Johnson***, 985 A.2d 915, 925 (Pa. 2009) (issues not developed in appellant's brief are waived for review on appeal), *cert denied*, 131 S.Ct. 250 (U.S. 2010).