J-A33012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID W. FISHER AND SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| SCOTT A. EXLEY, BURSICH ASSOCIATES, INC., FRANK P. MURPHY AND MURPHY & DENGLER | |
| Appellees | No. 1170 EDA 2014 |

Appeal from the Order March 20, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2013-11954

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED JANUARY 16, 2015**

David W. Fisher and Selective Insurance Company of South Carolina (collectively Appellants) appeal from the trial court's order sustaining, with prejudice, Frank P. Murphy and Murphy & Dengler's (collectively Appellees) preliminary objections[1] and striking Appellants' amended complaint with

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In reviewing an order granting preliminary objections in the nature of a demurrer, the appellate court is presented with a purely legal question: whether the law says with certainty that no recovery is possible. *Hess v. Fox, Rothschild, LLP*, 925 A.2d 789 (Pa. Super. 2007).  In determining whether the trial court properly sustained preliminary objections:

*(Footnote Continued Next Page)*

prejudice in this **_Dragonetti_** Act[2] case. After careful review, we affirm on the well-reasoned opinion authored by the Honorable Bernard Moore.

In April 2006, Fisher, an insurance broker, allegedly disseminated defamatory statements to numerous third parties about Appellees in the Pottstown community. The statements were contained in a one-page newsletter entitled "The Pottstown Merky." The newsletter accused Appellees Exley and Bursich Associates "of being involved in illegal transactions in dealings with various municipalities and non-profit businesses" and contained accusations that Exley and Bursich conspired with others to commit theft while engaged in "classic quid-pro-quo deals."

At the time of the publication, Exley was part-owner of Bursich Associates, a company that provided engineering and land surveying services, often for municipalities. On November 8, 2006, Appellees Exley

_(Footnote Continued)_ ────────────

> The appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of the appellate court's inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. The appellate court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case if free and clear of doubt.

**_Id._** at 806.

[2] 42 Pa.C.S.A. §§ 8351-8355.

and Bursich filed a lawsuit[3] against Fisher alleging that he defamed[4] them by distributing the article to third persons. Appellees, Frank Murphy and Murphy & Dengler, were Exley and Bursich Associates' legal counsel in the underlying defamation action.

Fisher unsuccessfully moved for summary judgment; the case proceeded to trial before a jury. At trial Fisher's deposition testimony was read into evidence; Fisher denied authoring the article, but admitted that he distributed a copy of it to his attorney and business partner and also posted a copy of it on a bulletin board in the local bank. Fisher also conceded that he did not know the truth of the article's central allegations and, in fact, admitted that a particular accusation was indeed false. Fisher moved for nonsuit at the close of plaintiff's case, which was denied. The jury ultimately returned a defense verdict.

_____

[3] ***Exley et al. v. Fisher***, No. 2006-28018, Montgomery County Court of Common Pleas.

[4] In an action for defamation, the plaintiff has the burden of proving: (1) the defamatory character of the communication; (2) its publication by defendant; (3) its application to plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm resulting to plaintiff from its publication; (7) abuse of a conditionally privileged occasion. ***Agriss v. Roadway Express, Inc.***, 483 A.2d 456, 461 (Pa. Super. 1984), ***citing*** 42 Pa.C.S. § 8343(a). Moreover, a publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession. ***Cosgrove Studio and Camera Shop, Inc. v. Pane,*** 182 A.2d 751 (Pa. 1962);

Appellants filed the instant wrongful use of civil proceedings action against Appellants in connection with the underlying defamation lawsuit.[5] In their amended complaint, Appellants[6] alleged that Appellees wrongfully instituted the defamation action against Fisher in an effort to harass and injure him without having a reasonable belief that Fisher was responsible for any allegedly defamatory comments made in the article or that Fisher distributed the article to the Pottstown community. Appellants also alleged that Appellees Murphy and Murphy & Dengler knew of their client's lack of such reasonable belief in the facts against Fisher, yet refused to withdraw and continued to prosecute the defamation action. Finally, Fisher alleged that as a result of the defamation lawsuit, he suffered damage to his reputation and to the good will of his business.

In the **Dragonetti** action, Judge Moore granted Appellees' preliminary objections and dismissed Appellants' complaint with prejudice. Appellants filed the instant appeal, raising the following issues for our consideration:

(1) Did Fisher and Selective state a claim against the Defendants for wrongful use of civil proceedings under the

---

[5] Selective, Fisher's insurance carrier, tendered a defense to Fisher in the defamation lawsuit and retained a law firm to defend Fisher subject to a reservations of rights. Selective also provided a defense to allegations of non-covered punitive damages made by Appellees Exley and Bursich against Fisher in the defamation action.

[6] Selective was a named plaintiff on the **Dragonetti** action as a result of the attorneys' fees and costs it paid to defend Fisher in the underlying matter.

Dragonetti Act, 42 Pa.C.S.A. § 8351, *et seq.*, where their Amended Complaint alleged that Defendants lacked probable cause and acted with an improper purpose in initiating and continuing the underlying Defamation Action against David Fisher in ***Exley et al. v. Fisher***, No. 06-28018 (Montgomery Ct. Comm. Pl.)?

(2) Did the trial court commit an error of law in sustaining preliminary objections in the nature of a demurrer as to Plaintiff-Appellants' Dragonetti claim where the trial court took judicial notice of extraneous facts from the notes of testimony in ***Exley et al. v. Fisher***, No. 06-28018 (Montgomery Ct. Comm. Pl.), which were neither pled in Fisher's and Selective's Amended Complaint or raised in Defendants' Preliminary Objections?

(3) Did Plaintiff Selective Insurance Company of South Carolina ("Selective") have standing to pursue its Dragonetti Act claims against Defendants where Selective paid most of Fisher's defenses costs and possessed an equitable right of subrogation arising out of the express language of Selective's insurance contract with Fisher?

(4) Did Plaintiff David Fisher appropriately plead damages for losses incurred by his business from Defendants' underlying defamation lawsuit, where the alleged damages were incurred by him while operating as a sole proprietorship?

Wrongful use of civil proceedings is a tort arising when a person institutes civil proceedings with a malicious motive and lacking in probable cause. ***Rosen v. American Bank of Rolla***, 627 A.2d 190, 191 (Pa. Super. 1993). Pennsylvania codified this tort at 42 Pa.C.S.A. §§ 8351-55 (known as ***Dragonetti*** Act). Section 8351 of the Act reads as follows:

**§ 8351. Wrongful use of civil proceedings**

**(a) Elements of action**. --A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

- 5 -

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a).  An individual has probable cause under the Act when he reasonably believes in the existence of the facts upon which the claim is based and either:

(1)    Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2)    Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3)    Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S.A. § 8352 (Existence of probable cause).  **See also Bannar v. Miller**, 701 A.2d 232, 238 (Pa. Super. 1997) (wrongful use of civil proceedings' plaintiff must prove that defendant initiated or continued civil proceedings against plaintiff without probable cause or in grossly negligent manner, for improper purpose, and, that proceedings were terminated in favor of plaintiff).

Examining the averments in Appellants' amended complaint, together with the documents and exhibits attached thereto, **Hess**, **supra**, we agree

- 6 -

with the trial court that Appellees did not institute the underlying defamation action without probable cause or in a grossly negligent manner. 42 Pa.C.S.A. § 8352. Specifically, Appellants aver in their amended complaint that Exley denied any knowledge that Fisher published the article to anyone. *See* Appellants' Amended Complaint, 7/30/13, at ¶16. However, the testimony cited to support this averment only references whether Fisher placed copies of the article in a local bank branch. *See* Deposition Transcript of Scott A. Exley, 5/7/08, at 28:1-14. The complaint mentions nothing about whether Fisher disseminated or published the article to other third persons personally, as alleged in the underlying defamation action and testified to at trial. The complaint also avers that Exley admitted that he knew of no reason why Fisher would even want to defame him, however, this again does not demonstrate that he filed the action without probable cause or in a grossly negligent manner. 42 Pa.C.S.A § 8351(a)(1).

Moreover, the averments do not support the conclusion that Appellees commenced the defamation action to harass and/or injure Fisher or for some other improper purpose. Merely because Exley testified at his deposition that he did not claim that Fisher ever lied, Deposition Transcript of Schott A. Exley, 5/7/08, at 89:4-20, or that Exley had information that Fisher said or wrote any of the comments, *id.* at 89:21-23, does not mean that he did not disseminate the article to third persons. All that is necessary to "publish" defamatory material is its communication intentionally or by a negligent act

- 7 -

to one other than the person defamed. ***Gaetano v. Sharon Herald Co.***, 231 A.2d 753 (Pa. 1967).

Finally, the fact that Appellants were unsuccessful in moving for summary judgment and non-suit, as well as the fact that the case was submitted to the jury for a determination on factual issues, further supports the concision that probable cause existed for Appellees to file the underlying defamation action. ***See Meiksin v. Howard Hanna Co.***, 590 A.2d 1303 (Pa. Super. 1991) (where ***Dragonetti*** plaintiffs in prior lawsuit unsuccessfully moved pre-trial for summary judgment and had compulsory non-suit denied, probable cause existed as matter of law in prior lawsuit to defeat ***Dragonetti*** action).

After a review of the parties' briefs, the relevant case law, and record on appeal, we affirm the trial court's order sustaining Appellees' preliminary objections and dismissing, with prejudice, Appellants' amended complaint based upon Judge Moore's Pa.R.A.P. 1925(a) opinion. We instruct the parties to attach a copy of Judge Moore's decision in the event of further proceeding in the matter.

Order affirmed.

WECHT, J. joins the Memorandum.

STRASSBURGER, J. files a Dissenting Memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/16/2015

IN THE COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL DIVISION

DAVID W. FISHER and SELECTIVE :    Sup. Ct. No. 1170 EDA 2014
INSURANCE COMPANY OF SOUTH :    Comm. Pl. Ct. No. 2013-11954
CAROLINA    :

       v.    :

SCOTT A. EXLEY, BURSICH    :
ASSOCIATES, INC., FRANK P.    :
MURPHY and MURPHY & DENGLER :



2013-11954-0050   6/18/2014 11:34 AM   # 9840975
Opinion
Rcpt#Z2142859   Fee:$0.00
Mark Levy - MontCo Prothonotary

OPINION

Moore, J.                                            June 18, 2014

## I.    FACTS AND PROCEDURAL HISTORY

This matter involves a claim for wrongful use of civil proceedings ("Dragonetti action" 42. Pa.C.S.A. § 8351 et seq.), arising from a defense verdict in an underlying defamation lawsuit. David W. Fisher, who was the defendant in the underlying defamation action, and Selective Insurance Company of South Carolina appeal this court's orders that sustained the preliminary objections of the defendants and dismissed with prejudice the Amended Complaint of Fisher and Selective Insurance.

The defendants in this matter are Scott A. Exley and Bursich Associates, Inc., who were the two plaintiffs in the underlying defamation action, and also Frank Murphy and Murphy & Dengler, who were their legal counsel. At the time of the underlying defamation lawsuit, Scott Exley was part-owner of Bursich Associates, which was a company that provided engineering and land surveying services, often for municipalities. Exley and Bursich Associates alleged that David Fisher, who was an insurance broker,

did knowingly, intentionally, voluntarily and maliciously distribute, publish and disseminate defamatory statements against them in the Pottstown community.

Specifically, the allegations stemmed from a one-page newsletter, dated April 28, 2006, entitled "The Pottstown Merky," an apparent play on words of the local newspaper "The Pottstown Mercury." The newsletter contained only one article. That article accused Exley and Bursich Associates of being involved in illegal transactions in their dealings with various municipalities and non-profit businesses. No author or source is named in the newsletter. The article appears under the headlines "Troubles on Borough Council" and "Vlahos in it for personal gain," referring to Pottstown Borough Council and one of its members at the time, James Vlahos. The article reads in full, as follows:

> How would you feel if you were Jack Wolf while watching all your efforts these past several years rendered meaningless by the actions of "BIG" Jim Vlahos.
>
> In just a few short months, Big Jim has wreaked havoc in the borough. As he has done in the past at New Hanover, he is planning to turn over the code enforcement department to Bursich Associates. In this classic quid pro quo deal, Vlahos receives the insurance business at Bursich and Creative Health. Scott Exley of Bursich Associates, and Pottstown's engineer, personally awarded Vlahos this business to Vlahos in return for New Hanover's engineering work. Now they're at it again and this time Big Jim is maneuvering Exley into a lucrative contract to take over and perform the duties of the code enforcement department.
>
> Remember these two are behind the debacle at the Ricketts Center. Everything they touch turns sour. For example, the recent labor/management troubles have been instigated by Big Jim in a ploy to take over the borough's health insurance business. He plans to give the insurance business to his partner in crime, Dave Buttaro. They share in the proceeds of their joint scams all conducted locally and perpetrated against not for profits. Their victims include Creative Health, the YMCA, Brookside Country Club, PAL and many other organizations.
>
> How do they do it? Through accomplices like Jim Konnick, Jeff Bevington, Bob Brant and Tom Dunn. The money they steal in the

2

546u

backrooms of Pottstown is shared by all and distributed to the other members of their organization.

All that's left is a path of destruction that includes the mess called the Ricketts Center, a Pottstown government in shambles, unable to function from one day to the next, and these money grabbing politicians using their positions and influence to line their pockets.

Vlahos, Berry, Exley, Brant, Konnick, Bevington, Buttaro, Marsteller and the others do their business in the shadows behind the republican party and quasi legitimate businesses. Mr. Wolf, turn the light on these guys and expose them for what and who they are. You have been and honest and hard working civil servant. Everyone in Pottstown knows that you will do the right thing.

This is the first edition of the new and improved Pottstown Merky. We publish the news that the Mercury doesn't.

*See* Underlying Action, Trial Ex. P-1.[1]  In sum, the article accused Exley and Bursich

Associates of being involved in illegal quid pro quo deals with Vlahos, whom it alleged

abused his borough council powers.  The article specifically alleged that Vlahos gave

Bursich Associates the work in the borough's code enforcement department, and Bursich

Associates in return gave Vlahos, an insurance broker, the insurance business at Bursich

Associates.  Fisher was a competitor of Vlahos' in the insurance business.  (N.T. 8/7/12,

pp. 83-92).[2]

Thereafter, Exley and Bursich Associates filed a lawsuit against Fisher here in the

Montgomery County Court of Common Pleas, alleging that Fisher defamed them by

distributing the article to third persons.  No preliminary objections or motion for

judgment on the pleadings was ever filed by Fisher.  Discovery was conducted, and

---

[1]  The Underlying Action in this case refers to Scott A. Exley and Bursich Associates, Inc. v. David W. Fisher, which is docketed at 2006-28018 in the Montgomery County Court of Common Pleas.

[2]  The citations to the Notes of Testimony from 8/6/12, 87/12, 8/8/12, and 8/9/12 all refer to the four days of trial in the underlying defamation action, No. 2006-28018.

3

Fisher filed a motion for summary judgment, arguing therein that the defamation claim failed as a matter of law because (1) the article did not have a defamatory character; (2) there was no publication of the article to a third person; (3) Exley and Bursich Associates could not present sufficient evidence of actual malice on the part of Fisher, which Fisher alleged they were required to show since, as Fisher argued, they were public figures; and (4) Exley and Bursich Associates could not present sufficient evidence to establish actual harm.

The Honorable William J. Furber, Jr. denied Fisher's motion for summary judgment by an order dated November 10, 2010, and allowed Exley and Bursich Associates' case to proceed. Before the trial, Fisher filed two motions in limine, one arguing that the article was not defamatory under Pennsylvania law, and the second arguing that Exley and Bursich Associates were public officials or public figures for purposes of defamation analysis. The Honorable Emmanuel A. Bertin, who was the trial judge, denied both these motions. (N.T. 8/6/12, p. 12; N.T. 8/8/12, p. 66).

At trial, Fisher's deposition testimony was read into evidence. At his deposition, while Fisher denied authoring the article, he did admit that he distributed a copy of it to his attorney and his business partner. (N.T. 8/6/12, pp. 108-09). Fisher admitted that he posted a copy of the article on a bulletin board of a local bank. (N.T. 8/6/12, p. 110). He also conceded that he did not know the truth of one of the article's central allegations: that Exley and Bursich Associates had previously engaged in a similar illegal quid pro quo deal when Vlahos had previously served as township supervisor in New Hanover Township. (N.T. 8/6/12, pp. 111, 118). In closing argument, Fisher's counsel conceded

4

Circulated 12/18/2014 09:31 AM

that this particular accusation in the article was false, in that Bursich Associates had never obtained work for New Hanover Township. (N.T. 8/9/12, p. 39).

During the defamation trial, Gregory Berry testified that, in a conversation with David Fisher at a local 7-11 store, Fisher said that he "put [the articles] up . . . [and] sent them and faxed them to everyone" he knew. (N.T. 8/6/12, p. 81). Indeed, Fisher added, according to Berry, that he "would do it again if another one came out." (N.T. 8/6/12, p. 81). Furthermore, Edward E. Panzeter, III, who worked at Bursich Associates as an employee of Exley's at the time the article appeared, testified at trial that he picked up a copy of the article at the bank and found it to be "malicious." (N.T. 8/6/12, p. 70).

At the conclusion of the plaintiffs' case, Fisher moved for a nonsuit, which Judge Bertin denied. (N.T. 8/7/12, pp. 119-127). Fisher then proceeded to present his defense. The trial lasted a total of four total days, and the jury returned a defense verdict in favor of Fisher.

After the defamation action had been resolved in his favor, Fisher and Selective Insurance commenced the instant Dragonetti action, via an Amended Complaint, claiming that Exley and Bursich Associates, through their legal counsel of Frank Murphy from the law firm Murphy & Dengler, commenced the defamation litigation to harass and injure Fisher, and without having a reasonable belief that Fisher defamed them. Exley and Bursich Associates, and Murphy & Dengler, both filed preliminary objections, which this court sustained. David Fisher and Selective Insurance Company now appeal this court's determination.

5

## II. DISCUSSION

In order for the trial court to adjudicate preliminary objections filed in a Dragonetti case, the court must take judicial notice of and analyze comprehensively the complete record of the underlying action and evaluate the merits of that claim. *See e.g.*, *Keystone Freight Corp. v. Stricker*, 31 A.3d 967 (Pa. Super. Ct. 2011). Furthermore, it is ripe for this court to resolve a Dragonetti case on preliminary objections. *See Lerner v. Lerner*, 954 A.2d 1229 (Pa. Super. Ct. 2008). Federal courts, when applying Pennsylvania law, have routinely stricken Dragonetti claims on the basis of a demurrer contained in motions to dismiss. *See, e.g., Bobrick Corp v. Santana Products, Inc.*, 698 F.Supp.2d 479 (M.D.Pa. 2010); *Villari Brandes & Giannone, PC v. Wells Fargo Fin. Leasing, Inc.*, No. 13-297, 2013 WL 5468497 (E.D.Pa. Sept. 30, 2013); *Arader v. Dimitrov*, No. 11-3626, 2011 WL 4807924 (E.D.Pa. Oct 7, 2011).

The plaintiff's Amended Complaint is solely predicated upon what occurred in the underlying action and makes specific reference to that litigation. Any procedural objection to this court's determination of issues of probable cause, improper purpose and gross negligence have been waived since these issues were raised by the defense in preliminary objections with supporting exhibits attached and the plaintiff did not file preliminary objections to the defendants' preliminary objections. *See Richmond v. McHale*, 35 A.3d, 782-83 (Pa. Super. Ct. 2012), *quoting Preiser v. Rosenzweig*, 615 A.2d 303, 305 (Pa. Super. Ct. 1992). Accordingly, any possible challenge by the plaintiff on procedural grounds to the preliminary objections of the defendants is waived.

6

550a

"[A] party seeking redress under Dragonetti bears a heavy burden." *U.S. Express Lines, Ltd. V. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). The Dragonetti Act provides, in relevant part:

### § 8351 Wrongful use of civil proceedings

(a) **Elements of action.**--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

> (2) The proceedings have terminated in favor of the person against whom they are brought.

. . .

42 Pa.C.S.A. § 8351(a)(1)-(2).

The Act defines probable cause as follows:

### § 8352. Existence of probable cause

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352(1)-(3).

7

551a

To prevail in a Dragonetti claim, a plaintiff must show that the defendant "maliciously instituted proceedings against [him], that [the defendant] lacked probable cause to institute the proceedings, and that the proceedings terminated in favor of [the plaintiff]." *Keystone Freight Corp*, 31 A.3d at 972 (citations omitted). A Dragonetti Act plaintiff "bears the burden of proving that the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties, or adjudication of the claim on which the proceedings were based." *Id.* at 972, *citing* 42 Pa.C.S. § 8354(4). Likewise, "[e]ven if an attorney lacked probable cause in filing a lawsuit on behalf of a client, he is not liable for wrongful use of civil proceedings unless he filed the lawsuit with an improper purpose. *Morris v. DiPaolo*, 930 A.2d 500, 504 (Pa. Super. Ct. 2007). "[A] termination of civil proceedings by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause." Restatement (Second) of Torts § 675, cmt. b; *Ludmer v. Nernberg*, 640 A.2d 939, 944 (Pa. Super. Ct. 1994).

With regard to attorney liability on a Dragonetti action, "as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case." *Keystone Freight Corp*, 31 A.3d at 973, *citing Morris*, 930 A.2d at 505. "Lawyers can act safely act upon the facts stated by their clients." *Meiksin v. Howard Hanna Co., Inc.*, 590 A.2d 1303 (Pa. Super. Ct. 1991).

Upon review of the underlying action, the least that can be said is that Exley and Bursich Associates had a viable cause of action, and there is no legal basis to sustain a Dragonetti action in this case against them and the defendant law firm. Here, there was probable cause as a matter of law in view of the existence of legitimate disputes of fact

8

While the proceedings underlying the instant action did terminate with a jury verdict in favor of Fisher, it is clear that Exley, Bursich Associates and their lawyer believed in the existence of the facts upon which their claim was based and reasonably believed that under those facts their claim was cognizable under existing tort law. Indeed, the underlying action proceeded all the way to a jury verdict. Fisher never filed preliminary objections, nor did he file a motion for judgment on the pleadings. His motion for summary judgment was denied, as was his motion for nonsuit at trial.

Exley and Bursich Associates' defamation action was founded upon the testimony of multiple witnesses, including Fisher himself. Fisher admitted that he distributed the article to at least two persons and also admitted that he posted the article on a bulletin board at a local bank. (N.T. 8/6/12, pp. 108-09). Furthermore, George Berry testified that Fisher stated to him that he intended to distribute the article by faxing it to everyone he knew. (N.T. 8/6/12, p. 81). Exley and Bursich Associates did not need to show that Fisher authored the article himself to establish defamation, only that he published it to a third person. In addition, Edward Panzeter testified to the defamatory nature of the article by stating he found it to be "malicious." (N.T. 8/6/12, p. 70). Such testimony amounted to probable cause, and such probable cause was confirmed by the trial court's denial of Fisher's motion for summary judgment and motion for nonsuit.

Indeed, Fisher's counsel conceded in his closing argument that Fisher made a "mistake" in posting the article at the bank. (N.T. 8/9/12, p. 44). Furthermore, Fisher's counsel conceded in a post-trial memorandum that the "court concluded the publication was capable of defamatory meaning but properly left to the determination of the jury the question of whether the article actually defamed [] Exley or Bursich []." *See*

9

Memorandum of Law in Opposition to Plaintiff's Motion for Post-Trial Relief, pp. 3-4, No. 2006-28018, Docket Entry 74.

Furthermore, Exley and Bursich Associates did not act with gross negligence. "The presence of probable cause . . . does not necessarily defeat the entire cause of action for wrongful use of civil proceedings, as the clear language of Section 8351 permits a cause of action to be based on gross negligence or lack of probable cause." *Keystone Freight Corp.* 31 A.3d at 973 (quotations omitted). The Superior Court has defined gross negligence as "the want of even scant care and the failure to exercise even that care which a careless person would use." *Hart v. O'Malley,* 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001). A court is "precluded from considering any conclusions of law or inferences which are not supported by the factual allegations contained in the complaint." *Hart v. O'Malley,* 647 A.2d 542, 553 (Pa. Super. Ct. 1994), *aff'd* 676 A.2d 222 (Pa. 1996). A plaintiff, therefore, cannot maintain a cause of action for wrongful use of civil proceedings by merely stating "conclusions of law, unwarranted inferences from facts, argumentative allegations, and expressions of opinion." *Neill v. Eberly,* 620 A.2d 673, 675 (Pa. Commw. Ct. 1983). Furthermore, the court "must not supply a fact missing in the complaint" in order to cure a defect in the pleading. *Hart,* 647 A.2d at 553. Plaintiffs have not set forth the facts that are essential to support their claim.

Exley and Bursich Associates' factual and legal presentations in the underlying litigation preclude a finding that they acted with gross negligence or an improper purpose in initiating and continuing the underlying defamation lawsuit. As discussed *supra,* Exley and Bursich Associates presented carefully reasoned arguments supported by

10

SCAN-3-06/18/2014N0025

witness testimony. Accordingly, Exley and Bursich Associates, and Murphy and Murphy & Dengler, did not act with gross negligence or an improper purpose.

This instant case is controlled by *Meiksin v. Howard Hanna Co., Inc.*, 590 A.2d 1303 (Pa. Super. Ct. 1991), where the Superior Court upheld the trial court's finding that there was probable cause as a matter of law in the underling action. *Meiksin* involved a Dragonetti Act claim by property owners against their real estate brokers and the brokers' attorneys for instituting a lawsuit to recover withheld real estate commissions. *Id.* at 1305-06. At issue in the *Meiksin* underlying action was the existence of an oral contract extension that would entitle the brokers to a commission if found enforceable. *Id.* The brokers were unsuccessful in their lawsuit. *Id.* The property owners later sued the brokers and their attorney, alleging that the underlying lawsuit was brought without probable cause. *Id.*

In *Meiksin*, the trial court granted summary judgment in favor of all the Dragonetti defendants. Plaintiffs there argued that factual issues that were submitted to the fact finder in the underlying action needed to be reviewed by a jury in the Dragonetti case to determine whether there was probable cause to institute the lawsuit. But the Superior Court rejected this analysis and held:

> [T]he existence of probable cause was present as a matter of law in view of the existence of a legitimate dispute of fact in the prior action for commissions. This was apparent from the denial of motions for summary judgment and compulsory non-suit in the prior action and the submission of disputed factual issues to the jury.

*Id.* at 1306.

The holding of the Superior Court in *Meiksin* is that the material facts relevant to the probable cause determination are simply whether there was a legitimate factual

11

dispute in the underlying action to be determined by the trier of fact. The Superior Court

further held:

> The existence of probable cause is also demonstrated by the fact that there
> was sufficient evidence [to require the factual dispute] be submitted to the
> jury for determination . . . This suggests that there was competent
> evidence of sufficient quantity and quality to demonstrate probable cause
> for a reasonable belief that the action could be maintained. This belief was
> confirmed also by the court's denial of motions in the underlying action
> for summary judgment and compulsory non-suit, motions which could
> have been granted only if there had been no competent evidence sufficient
> to maintain the action.

*Id.* at 1307; *see also Hadden v. Gouldey, et al.*, 25 Montgomery County Law Reporter

149 (2012), *aff'd* 55 A.3d 149 (Pa. Super. Ct. 2012); *Lerner v. Lerner*, 954 A.2d 1229

(Pa. Super. Ct. 2008) (sustaining preliminary objections in nature of demurrer to

Dragonetti claim).

The underlying action was a routine defamation case with legitimate disputed

factual issues. The defendants presented substantial evidence and well-reasoned

arguments in support of their claims. Accordingly, this court properly sustained the

defendants' preliminary objections and dismissed the case.

III.    CONCLUSION

Based upon the all of the foregoing reasons, this Court's determination was

proper and should be AFFIRMED.

BY THE COURT:

_____
BERNARD A MOORE, J.

Date:   June 18, 2014
Cc:     Michael N. Onufrak, Esq.
        Paraskevoula V. Mamounas, Esq.
        Josh J.T. Byrne, Esq.

13

557a